UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| PEERLESS INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Docket no. 2:15-cv-00104-GZS |
| | ) | |
| K.F.H. and GREGORY VROOMAN, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |

ORDER ON MOTION FOR SUMMARY JUDGMENT

Before the Court is the motion for summary judgment filed by Plaintiff Peerless Insurance Company ("Plaintiff" or "Peerless").  For the reasons explained herein, the Court GRANTS Plaintiff's Motion for Summary Judgment (ECF No. 30).

I.    LEGAL STANDARD

Generally, a party is entitled to summary judgment if, on the record before the Court, it appears "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id. at 248.  A "material fact" is one that has "the potential to affect the outcome of the suit under the applicable law."

Nereida–Gonzalez v. Tirado–Delgado, 990 F.2d 701, 703 (1st Cir. 1993) (citing Anderson, 477 U.S. at 248) (additional citation omitted).

The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). In determining whether this burden is met, the Court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor. Santoni v. Potter, 369 F.3d 594, 598 (1st Cir. 2004).

Once the moving party has made this preliminary showing, the nonmoving party must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." Triangle Trading Co. v. Robroy Indus., Inc., 200 F.3d 1, 2 (1st Cir. 1999) (citation and internal punctuation omitted); see also Fed. R. Civ. P. 56(e). "Mere allegations, or conjecture unsupported in the record, are insufficient." Barros-Villahermosa v. United States, 642 F.3d 56, 58 (1st Cir. 2011) (quoting Rivera–Marcano v. Normeat Royal Dane Quality A/S, 998 F.2d 34, 37 (1st Cir. 1993)); see also Wilson v. Moulison N. Corp., 639 F.3d 1, 6 (1st Cir. 2011) ("A properly supported summary judgment motion cannot be defeated by conclusory allegations, improbable inferences, periphrastic circumlocutions, or rank speculation." (citations omitted)). "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party." In re Spigel, 260 F.3d 27, 31 (1st Cir. 2001) (quoting In re Ralar Distribs., Inc., 4 F.3d 62, 67 (1st Cir. 1993)).

## II.    FACTUAL BACKGROUND[1]

### A.    The Insurance Policy

Peerless issued to Gregory Vrooman ("Vrooman") two consecutive insurance policies that included homeowners insurance.  (Stipulation of the Parties (ECF No. 28) ("SOP"), ¶ 2.)  The first policy was effective from November 18, 2008 until November 18, 2009, and the second policy was effective from November 18, 2009 to November 18, 2010 (the two policies, together, the "Policy").[2]

Under the Policy's "Personal Liability" section, Peerless is obligated to provide defense and indemnification (to specified limits) "[i]f a claim is made or a suit is brought against an 'insured' for damages because of 'bodily injury' . . . caused by an 'occurrence' to which this coverage applies . . . ."  (SOP Ex. 2, PageID # 83.)  Vrooman, the "named insured" under the Policy, is an "insured."  (Id. at PageID # 70, 72.)  "Bodily injury" is defined in relevant part as "bodily harm, sickness or disease . . . ."  (Id. at PageID # 96.)  "Occurrence" is defined as "an offense or accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period in: (a) 'Bodily injury' . . . ."  (Id. at PageID # 96.)

The Policy contains certain exclusions applicable to the Personal Liability coverage.  Such exclusions include claims for damages because of "'bodily injury' . . . [w]hich is expected or intended by one or more 'insureds.'"  (Id. at PageID # 83, 91.)  Also excluded are claims for

---

[1] The Court notes that the factual background comes from a stipulated statement of undisputed facts and supporting documents, which the parties have stipulated to solely for purposes of deciding the pending motion.  See D. Me. Local Rule 56(g).

[2] The provisions of the Policy applicable to the duty to defend at issue here are the same in each of the two policies referred to herein, collectively, as the "Policy."  (SOP, ¶ 3.)

damages because of "'bodily injury' . . . [a]rising out of sexual molestation, corporal punishment or physical or mental abuse." (Id. at PageID # 83, 85.)

### B.     Vrooman and K.F.H.

According to the amended complaint filed by the next friend of K.F.H., a minor ("K.F.H.") against Vrooman (SOP Ex. 1) (the "K.F.H. Complaint"), K.F.H.'s mother was previously involved in a romantic relationship with Vrooman.  (Id. at PageID # 64.)  K.F.H. and her mother lived at Vrooman's residence during 2009 and 2010.  (Id. at PageID # 65.)  Over the course of this time, Vrooman made sexual contact with K.F.H. on a number of occasions, causing K.F.H. to suffer emotional distress and, ultimately, to incur medical expenses.  (Id.)

According to the K.F.H. Complaint, in addition to his physical acts of abuse, Vrooman made a number of verbal communications to K.F.H. that caused her to experience emotional distress.  Vrooman told K.F.H. that "he wanted to play with her" and that their interactions, including the sexual contact, should remain a secret.  (Id. at PageID # 66.)  His statements allegedly caused K.F.H. to believe that if she told anyone about Vrooman's behavior towards her, K.F.H. and her family members would no longer be able to live at Vrooman's home and would be financially destabilized as a result.  (Id.)  The K.F.H. Complaint asserts that K.F.H. suffered emotional distress as a result of these verbal communications.  (Id.)

Vrooman was later prosecuted for multiple counts of unlawful sexual contact and unlawful sexual touching, felonies under the laws of the State of Maine.  State v. Vrooman, Lincoln County Superior Court Docket No. CR-2010-387.  Following a jury trial, Vrooman was convicted of both offenses.  (Judgment and Commitment of Gregory W. Vrooman (ECF No. 29) Ex. A, PageID # 100.)  These convictions were upheld on appeal.  See State v. Vrooman, 71 A.3d 723 (Me. 2013).

K.F.H.'s next friend brought suit against Vrooman (the "K.F.H. Suit") in Maine Superior Court, Cumberland County, on October 16, 2014.  (SOP ¶ 1.)  On October 29, 2014, K.F.H.'s next friend filed the K.F.H. Complaint in Maine Superior Court, Cumberland County, to amend the initial complaint.  (Id.)  The K.F.H. Complaint contains counts of assault, intentional infliction of emotional distress, negligence, and negligent infliction of emotional distress.  (SOP Ex. 1.)  The K.F.H. Complaint alleges that "[Vrooman's] actions constitute an extreme and outrageous course of conduct that intentionally or recklessly caused severe emotional distress to K.F.H."  (Id. at PageID # 66.)

## C.     The Present Dispute

On March 17, 2015, Peerless brought suit against K.F.H.'s next friend and Vrooman (the "Defendants") by filing a declaratory judgment complaint (ECF No. 1) (the "Peerless Complaint") in this Court.  Plaintiff Peerless seeks a declaratory judgment that Peerless has no duty to defend Vrooman in connection with the K.F.H. Suit.  K.F.H.'s next friend and Vrooman each filed answers (ECF Nos. 15 & 17) to the Peerless Complaint.

Plaintiff then filed its Motion for Summary Judgment (ECF No. 30).  Peerless argues that all of the claims asserted in the K.F.H. Complaint fall outside of the scope of the Policy.  Peerless further argues that, even if any of the claims would otherwise fall within the scope of the Policy, any such claim is excluded by two separate provisions of the Policy: the provision excluding claims for harms "expected or intended by one or more 'insureds,'" and the provision excluding claims for harms "[a]rising out of sexual molestation . . . ."  (SOP Ex. 2, PageID # 85, 91.)

Defendants disagree with each of these arguments, and both Defendants have filed responses in opposition (ECF Nos. 31 & 33).  Defendants assert that the facts alleged in the K.F.H.

Complaint give rise to a claim or claims that trigger Peerless's "duty to defend" under the Policy and the laws of the State of Maine.

## III.    DISCUSSION

It is well-established under Maine law that "whether an insurer has an obligation to defend its insured against a complaint is a question of law."  Bucci v. Essex Ins. Co., 393 F.3d 285, 290 (1st Cir. 2005) (quoting Elliott v. Hanover Ins. Co., 711 A.2d 1310, 1312 (Me. 1998)) (internal quotation omitted).

Under Maine law, the duty to defend is determined by a comparison test.  The complaint in the underlying lawsuit is compared with the insurance policy to determine whether any legal or factual basis could be developed at trial that would obligate the insurer to indemnify the insured under the policy.  See, e.g., Auto Europe, LLC v. Connecticut Indem. Co., 321 F.3d 60, 66 (1st Cir. 2003); York Ins. Group of Maine v. Lambert, 740 A.2d 984, 985 (Me. 1999) ("[W]e determine the duty to defend by comparing the allegations in the underlying complaint with the provisions of the insurance policy . . . .  A duty to defend exists if a complaint reveals a potential . . . that the facts ultimately proved may come within the coverage.") (internal citations and quotations omitted).  A court applying the comparison test must resolve any ambiguity by finding a duty to defend.  See Union Mut. Fire Ins. Co. v. Inhabitants of Town of Topsham, 441 A.2d 1012, 1015 (Me. 1982) (citing Travelers Indem. Co. v. Dingwell, 414 A.2d 220 (Me. 1980)).

However, the courts of Maine have recognized an exception to this general rule, permitting "the use of offensive, nonmutual collateral estoppel on a case by case basis if it serves the ends of justice." State Mut. Ins. Co. v. Bragg, 589 A.2d 35, 37 (Me. 1991) (citation omitted).  In order to apply this exception, a court must conclude that "the identical issue necessarily was determined

by a prior final judgment, and that the party estopped had a fair opportunity and incentive to litigate the issue in the prior proceeding."[3] Id.

In light of the comparison test and the potential application of collateral estoppel to previously litigated issues, and assuming that the K.F.H. Complaint alleges an "occurrence" under the terms of the Policy,[4] the questions now before this Court are as follows: (1) whether K.F.H.'s claims are excluded from coverage under the Policy's exclusion of bodily injuries "expected or intended by one or more 'insureds,'" and (2) whether K.F.H.'s claims are excluded from coverage under the Policy's exclusion of bodily injuries "arising out of sexual molestation, corporal punishment or physical or mental abuse."

### A.      Exclusion of Bodily Injuries Expected or Intended by an Insured

The Policy excludes harms that are "expected or intended by one or more 'insureds.'" (SOP Ex. 2, PageID # 91.)  Peerless argues that this Court should apply offensive, nonmutual collateral estoppel to conclude that, as a matter of law, Vrooman's convictions for unlawful sexual touching and unlawful sexual contact establish that Vrooman intended to harm K.F.H., bringing the allegations in the K.F.H. Complaint entirely within this exclusion.  This argument has considerable support in the case law of Maine.  Notwithstanding an allegation of negligence

---

[3] Vrooman, and not K.F.H., was party to the criminal action against Vrooman.  However, the courts of Maine have held that collateral estoppel on the issue of the insured's intent applies not only to the insured, but to his or her victim as well.  See Bragg, 589 A.2d at 38 (finding that victims of insured were estopped from litigating insured's intent following his conviction because the victims' "rights against [insurer] all are derivative of [insured's] insurance contract").

[4] This Court assumes, without deciding, that the K.F.H. Complaint alleges an "occurrence," defined in the Policy as "an *offense* or accident . . . which results . . . in . . . [b]odily injury" (emphasis added).  (SOP, PageID # 96.)  In light of the well-established principle under Maine law that the terms of an insurance policy are construed strictly against the insurer, see Hall v. Patriot Mut. Ins. Co., 942 A.2d 663, 666 (Me. 2007), this assumption is at least plausible under the facts of this case.

against an insured in a complaint, a prior conviction that proved the insured had any "actual, subjective intention to cause the bodily injury alleged" in that complaint can bring that allegation into the "expected or intended" exclusion in the insured's policy.  Bragg, 589 A.2d at 37; see also Landry v. Leonard, 720 A.2d 907, 910 (Me. 1998) ("[W]hen there is deliberate criminal conduct in which there is a substantial certainty of injury, that conduct excludes a finding of negligence for injuries to the victim of the criminal conduct.").

The law is clear on the preclusive effect of a conviction for the sexual abuse of a child on the abuser's ability to obtain defense and indemnification under a policy that excludes coverage for harms expected or intended by the insured.  The Supreme Judicial Court of Maine has stated, "[T]he intent to commit the act [of sexual abuse] inherently carries with it the intent to cause the resulting injury."  Perreault v. Maine Bonding & Cas. Co., 568 A.2d 1100, 1101 (Me. 1990).

Defendants do not dispute that the harms resulting from Vrooman's physical acts of abuse are excluded as harms "expected or intended" by an insured.  However, they argue that in addition to these physical acts, Vrooman separately engaged in communications with K.F.H. that intentionally or recklessly harmed K.F.H.  Because such communications are not essential factual predicates of the unlawful sexual touching and unlawful sexual contact offenses, Defendants assert that Vrooman's convictions do not establish that Vrooman intended to harm K.F.H. when he engaged in these communications.  (Def. K.F.H.'s Obj. to Pl.'s Mot. for Summ. J. (ECF No. 31) at PageID # 152-153.)

The communications in question included inducements by Vrooman to initiate sexual contact with K.F.H., Vrooman's instructions to her to keep such contact a secret, and threats regarding the consequences that would result if K.F.H. told others about the sexual contact.  These communications were components of Vrooman's "course of conduct" as he committed repeated

8

acts of unlawful sexual touching and contact.  The context and subject matter of these communications cannot be differentiated from the other actions he took to abuse K.F.H. [5] Consequently, his intent to harm K.F.H. through his conduct, conclusively established through Vrooman's convictions, cannot be limited only to his physical acts.  Rather, Vrooman's related communications with K.F.H. are also associated with his intent to harm her through his sexually abusive actions.

Defendants cite the Maine Supreme Judicial Court's decision in Korhonen v. Allstate Insurance Co. as a basis for distinguishing sexual abuse-related harms from other harms to the same victim.  In Korhonen, a negligent supervision claim against the wife of a man who sexually abused a child gave rise to a duty to defend because the "claims asserted against [insured] are for injuries that are distinct from those associated with [insured's husband's] intentional and criminal conduct."  827 A.2d 833, 838 (Me. 2003).  Notably, the injuries in question allegedly resulted from the consumption of alcohol by the child after the insured allegedly failed to supervise her activities, not from the sexual abuse of the child by the insured's husband.  Id. at 837-838.

This case is readily distinguishable from Korhonen.  Unlike the allegations made in Korhonen, the allegations in the K.F.H. Complaint do not provide a basis for distinguishing between the harms caused by Vrooman's sexual abuse of K.F.H. and other harms to K.F.H.

First, unlike the injuries alleged in Korhonen, K.F.H.'s alleged injuries were all caused by the same person, Vrooman, who was convicted of abusing K.F.H.  See Hanover Ins. Co. v. Crocker, 688 A.2d 928, 931 (Me. 1997) (finding that exclusion of harms expected or intended by

---

[5] Though this Court need not decide the matter, it may also be the case that Vrooman's communications were themselves intended to harm K.F.H. by manipulating and intimidating her.  See Korhonen v. Allstate Ins. Co., 827 A.2d 833, 839 (Me. 2003) ("[V]erbally blaming, admonishing, and degrading the child and accusing her of lying . . . represent intentional conduct because the only possible interpretation of [alleged admonitions and accusatory statements] is that [insured] intended to admonish and degrade the child, the natural object of which is to cause emotional distress.").

"the insured" applied to insured abuser's actions, but not to negligent failure to supervise of abuser's spouse, a second insured under the policy); <u>Johnson v. Allstate Ins. Co.</u>, 687 A.2d 642, 644 (Me. 1997) (finding that exclusion of harms expected or intended by "any" insured applied to insured abuser's actions and to negligent failure to supervise of abuser's spouse, a second insured under the policy).

Second, the injuries alleged to K.F.H. alleged in the K.F.H. Complaint all resulted from Vrooman's abusive course of conduct, rather than a separate source of harm, such as the consumption of alcohol that allegedly harmed the victim in <u>Korhonen</u>. <u>See</u> <u>Korhonen</u>, 827 A.2d at 837 (describing alleged negligent supervision as "result[ing] in the child accessing alcohol and becoming extremely ill as a result").

This conclusion is consistent with Maine's public policy against insuring an abuser for the harms caused by this or her criminal acts of abuse. <u>See</u> <u>Perreault</u>, 568 A.2d at 1102 ("[T]he general rule [is] that insurance to indemnify an insured against his or her own violation of criminal statutes is against public policy and, therefore, void.") (internal quotation omitted); <u>Hanover Ins. Co. v. Crocker</u>, 688 A.2d 928, 931 (Me. 1997) ("[I]ndemnifying a child abuser for his own criminal conduct is against public policy.").

###   B.   Exclusion of Bodily Injuries Arising out of Sexual Molestation

While the exclusion of claims for damages "expected or intended by one or more 'insureds'" is a sufficient basis for granting summary judgment to Plaintiff, a second exclusion provides an independent basis for the same result.  The injuries to K.F.H. alleged in the K.F.H. Complaint "[a]ris[e] out of sexual molestation, corporal punishment or physical or mental abuse" (SOP Ex. 2, PageID # 85), and are therefore excluded under the terms of the Policy.

10

Vrooman's communications, as identified in the K.F.H. Complaint, consist of inducements related to Vrooman's sexual abuse of K.F.H. and threats intended to secure her silence.  (SOP Ex. 1, PageID # 66.)  The interactions between Vrooman and K.F.H., including these communications and the physical acts of abuse by Vrooman, constitute what the K.F.H. Complaint accurately describes as a "course of conduct" that allegedly harmed K.F.H.   (Id.)   As such, the communications do not provide an independent basis for an alleged "occurrence" giving rise to a duty of Peerless to defend Vrooman in the K.F.H. Suit, but rather arise out of the sexual molestation of K.F.H. by Vrooman.

Defendants argue that "arising out of" is an ambiguous phrase.  (Def. K.F.H.'s Obj. to Pl.'s Mot. for Summ. J. (ECF # 31), PageID # 159-160; Def. Gregory Vrooman's Opp. to Pl.'s Mot. for Summ. J. (ECR # 33), PageID # 171-173.)   According to the Defendants, construing this ambiguous language narrowly against the drafting party (Peerless), any injuries resulting from Vrooman's statements to K.F.H. did not "[a]ris[e] out of sexual molestation," because they arose instead out of Vrooman's negligent or reckless choice of words.

As Defendants correctly assert, in Maine, ambiguous language in insurance contracts is construed to favor the insured over the drafting insurer.  See Cox v. Commonwealth Land Title Ins. Co., 59 A.3d 1280, 1283 (Me. 2013) (explaining that the Maine courts "construe ambiguous policy language strictly against the insurance company and liberally in favor of the policyholder.") However, the meaning of "arising out of" is not ambiguous, in contracts generally or in insurance policies specifically.  The courts of Maine have given this phrase "a broad interpretation," holding, for instance, that an injury "arises out of employment when . . . it has its origin, its source, or its cause in the employment."  Acadia Ins. Co. v. Vermont Mut. Ins. Co., 860 A.2d 390, 393 (Me. 2004) (internal quotation omitted).  As described by the First Circuit in the insurance context,

"Under Maine law . . . [phrases such as 'arising out of'] are understood to invoke the concepts of 'originating from, growing out of, flowing from, incident to or having connection with.'" Penn-America Ins. Co. v. Lavigne, 617 F.3d 82, 87 (1st Cir. 2010) (quoting Murdock v. Dinsmoor, 892 F.2d 7, 8 (1st Cir. 1989)). "Arising out of" is given a broad meaning under applicable case law, not an ambiguous one.

Applying this reading to the language of the Policy, any harm to K.F.H. that originated from, grew out of, flowed from, was incident to, or was connected with sexual molestation, is excluded from coverage under the Policy. To the extent that K.F.H. was harmed by Vrooman's verbal communications to K.F.H. made to facilitate and perpetuate his sexual abuse of her, such harm was connected with and incident to the sexual molestation that K.F.H. suffered.

Defendant's remaining arguments that the sexual molestation exclusion does not apply are similarly unavailing. Contrary to Defendants' position, the mere allegation that Vrooman acted recklessly or negligently when communicating with K.F.H. does not circumvent the applicability of the sexual molestation exclusion to the harms connected or incident to Vrooman's abuse of K.F.H. See Jacobi v. MMG Ins. Co., 17 A.3d 1229, 1233 (Me. 2011) (dismissing a claim for negligent infliction of emotional distress because it "requires . . . some other separate, independent tort that is the cause of the emotional distress . . . . That independent tort cannot be the sexual abuse, because the [p]olicy bans recovery for any damages 'arising out of sexual molestation.'"). See also Peerless Ins. Co. v. Clemens, 2013 WL 364819, *3 (D. Conn. 2013) (applying Connecticut law to conclude that "[g]iven the established meaning of the phrase 'arising out of' in the insurance context, causes of action sounding in negligence and recklessness fall within a sexual molestation policy exclusion if they have a clear causal connection to the alleged molestation and the injuries arising therefrom." (internal quotation omitted)).

Finally, Defendants' reliance on <u>Metropolitan Property and Casualty Insurance Co. v. McCarthy</u> is misplaced.  In <u>McCarthy</u>, the First Circuit concluded that allegations that the insured's ward "sexually and otherwise physically abused" the victim were not entirely excluded under policy language excluding coverage for the "sexual molestation of a person."  754 F.3d 47, 49 (1st Cir. 2014).  In that case, the allegations in the underlying complaint raised the possibility of acts of physical abuse that were independent from acts of sexual abuse and may have resulted in separate injuries to the victim.  In this case, however, the allegations made against Vrooman in the K.F.H. Complaint all concern his sexually abusive course of conduct, whether describing physical acts of abuse or the statements he made to manipulate K.F.H. and facilitate the further abuse of her.  The court in <u>McCarthy</u> differentiated independent acts and harms that potentially fell outside of the "sexual molestation" exception.  No such differentiation is possible here.

Assuming that the allegations made against Vrooman in the K.F.H. Complaint constitute an "occurrence" under the Policy, the claims made in the K.F.H. Complaint are excluded from coverage under two separate exclusions in the Policy: the exclusion of bodily injuries expected or intended by an insured, and the exclusion of bodily injuries arising from sexual molestation.  Therefore, Plaintiff's Motion for Summary Judgment is GRANTED.

## III.     CONCLUSION

For the reasons just stated, Plaintiff's Motion for Summary Judgment (ECF No. 30) is GRANTED.

SO ORDERED.

/s/ George Z. Singal
_____
United States District Judge

Dated this 14th day of October, 2015.